**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES ROBERT ROSS, JR.,
<u>Plaintiff-Appellant,</u>

v.                                                                      No. 95-2589

L. T. HELTON,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CA-93-122-4-T)

Argued: May 7, 1996

Decided: July 23, 1996

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge, and
CHAPMAN, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Pamela Anne Hunter, Charlotte, North Carolina, for
Appellant. Joseph Patrick Dugdale, Assistant Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Attorney
General, Isaac T. Avery, III, Special Deputy Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this § 1983 action against a state trooper, appellant Charles Ross challenges the district court's summary judgment ruling in favor of the appellee, L.T. Helton, on qualified immunity grounds. Appellant contends that the trooper's use of a racial slur soon after an arrest increases the likelihood that the force he used during the arrest was excessive and unreasonable. We disagree. The test of the reasonableness of a law enforcement officer's actions is objective, not subjective. Because the trooper's actions were objectively reasonable under the circumstances, we affirm the district court's ruling.

I.

Shortly before midnight on July 16, 1990, State Trooper Helton attempted to stop a white Pontiac Grand Prix, driven by Ross, for driving 61 m.p.h. in a 45 m.p.h. zone. Lights flashing and siren blaring, Helton followed the car for about four tenths of a mile before it stopped in the travel lane. When Helton approached the car on foot, it sped off. Helton again pursued until the car drove down a dead-end street, off the road, and into a yard. Ross fled on foot towards a brick retaining wall with Trooper Helton close behind.

Here the stories told by Ross and Helton diverge. Ross claims that as he was climbing the wall, Helton struck his ankle repeatedly with a heavy flashlight and then pushed him over the wall. Helton says he did not strike Ross' ankle or push him, but instead entered the yard through a gate and caught Ross on the other side after Ross fell from the wall. Both agree that Ross' left ankle was by then broken and that a struggle followed as Helton tried to handcuff Ross. Ross claims that Helton continued to strike him unprovoked with his flashlight. Helton claims he only defended himself from Ross' blows. A second officer arrived and assisted Helton in putting the handcuffs on Ross. A

2

bystander at the scene says he heard Helton, speaking with another officer, utter a racial epithet about Ross.

Ross was then taken to the hospital for treatment of his broken ankle. Both the emergency room physician and the emergency medical technician (EMT) who transported Ross report that Ross did not at that time accuse Helton of hitting him. Ross told the EMT that he'd broken his ankle in the fall from the wall, and the physician said that Ross' ankle injury was the type of injury consistent with falling off a wall but not consistent with being struck by a blunt object.

Police found an open fifth of Seagram's Extra-Dry Gin in Ross' car. He was later convicted of driving while impaired, driving with a revoked license, failing to stop, driving with an expired registration, and resisting arrest.

Ross filed this § 1983 action against Trooper Helton on July 14, 1993, alleging excessive use of force during the arrest. The district court granted Helton's motion for summary judgment on July 21, 1995, ruling that Helton's actions were reasonable under the circumstances and he was therefore entitled to immunity. The racial epithet did not affect the reasonableness calculation, the judge found, because it was uttered after the fact.

II.

A.

Ross' primary contention is that summary judgment should not have been granted on qualified immunity grounds because the racial slur used by Trooper Helton makes it more likely that Helton used excessive force which was not reasonable under the circumstances. The consideration of slurs and epithets, however, moves us into the subjective realm of personal motive which the Supreme Court has rejected as the basis for qualified immunity determinations.

The Court first articulated the objective reasonableness test for qualified immunity in Harlow v. Fitzgerald, 457 U.S. 800 (1982). The Court held that "government officials performing discretionary func-

3

tions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Again in Anderson v. Creighton , 483 U.S. 635, 641 (1987), the Court admonished parties not to "reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that Harlow sought to minimize." And more recently, in Graham v. Connor, 490 U.S. 386, 397 (1989), the Court declared that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."

Ross' argument that the racial slur in this case should be considered when assessing the reasonableness of the force used is merely an endrun around Harlow and its progeny, a reformulation of the subjective test with the intent to ascribe "evil intentions" to Helton. As such we cannot entertain it.

B.

Thus, under Harlow, Anderson, and Graham, the proper question for this court is whether the force Helton used was objectively reasonable under the circumstances. We believe that it was. Even if we assume, as Ross now contends, that Helton hit him in the ankle with a heavy flashlight as he climbed the wall and again as Helton was struggling to handcuff Ross, Helton's actions were reasonable given the situation. Ross had tried to outrun a police car. He had sped away after Helton had pulled him over and gotten out of the patrol car. Ross had driven off the road into a yard and had fled on foot. At the time of the alleged blows to the ankle, Ross was climbing over a brick fence into the yard of a private house, posing an unknown threat to the safety of the residents. Trooper Helton had no idea why Ross was so intent upon fleeing from the police, nor whether he was armed. An officer in Helton's shoes could reasonably use non-lethal force, such as blows to the ankle, to effect a lawful arrest.

4

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

5